IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| AARON JAMES HOWES, #508524, | ) ) ) |
| Plaintiff, | ) ) NO. 1:23-CV-00023 |
| v. | ) ) ) |
| | ) JUDGE CAMPBELL |
| JAMIE BRAGG, *et al.*, | ) MAGISTRATE JUDGE HOLMES |
| | ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

Aaron James Howes, a pre-trial detainee currently in the custody of the Hickman County Jail in Centerville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 and the Free Exercise Clause of the First Amendment or the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, against Jail Administrator Jamie Bragg, Correctional Officer/Corporal f/n/u Warren, and Correctional Officer/Sergeant f/n/u Sunder, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1). Plaintiff also submitted a letter dated April 20, 2023. (Doc. No. 8).

### I. SCREENING OF THE COMPLAINT

**A. PLRA Screening Standard**

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly

1

requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**B. Section 1983 Standard**

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**C. Facts Alleged in the Complaint**

Plaintiff is an adherent of the Muslim faith. On March 14, 2023, Plaintiff and inmate f/n/u Wilkins requested permission to go to the jail library to pray "because that's where the jail conducts

church." (Doc. No. 1 at 5). Officer Sunder denied the request. Plaintiff and Wilkins filed a grievance regarding the denial.

On March 15, 2023, Jail Administrator Bragg "pulled" Plaintiff and Wilkins into the hallway and "demanded" that they tell him their religion. (*Id*.) When Plaintiff told Bragg that his religion was Muslim, Bragg asked if Plaintiff knew which direction was east. Bragg then placed Plaintiff and Wilkins in solitary confinement, stating "it was because of [their] religion, so [they] could pray." (*Id*.) Plaintiff and Wilkins remained in solitary confinement for "a few hours." (*Id*. at 13).

As relief, Plaintiff requests compensatory damages and punitive damages. He also seeks injunctive relief in the form of changes to jail policy regarding Muslim prayers.

**D. Analysis**

Plaintiff names Jail Administrator Jamie Bragg, Correctional Officer/Corporal f/n/u Warren, and Correctional Officer/Sergeant f/n/u Sunder as Defendants to this action. (Doc. No. 1 at 2-3). Plaintiff brings claims against each Defendant in his official and individual capacities. (*Id*.) Plaintiff alleges claims under Section 1983 for violations of his rights under the First and Eighth Amendments as well as claims under RLUIPA.

1. Preliminary matters

Before moving to Plaintiff's claims, the Court addresses three preliminary matters.

While Plaintiff, as a non-attorney, may raise claims on his own behalf, he cannot bring claims in federal court on behalf of others. *See Covington v. Cadogan*, No. 1:18-cv-511, 2019 WL 2949845, at *2 (S.D. Ohio July 9, 2019) (citing *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996)). "A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." *Id*. This is question of standing. A prisoner does not

3

have standing to bring a Section 1983 claim on behalf of other prisoners. *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso*, 569 F.3d 258, 276-77 (6th Cir. 2009)). In addition, a claim under RLUIPA is subject to the general rules of standing under Article III of the United States Constitution. *See* 42 U.S.C. § 2000cc-2(a) ("Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution."). This means that a prisoner who is Muslim lacks standing to make "general assertions on behalf of the entire Muslim inmate community at [a prison]." *Pleasant-Bey v. Shelby Cnty. Gov't*, No. 2:17-cv-2502, 2019 WL 1601495, at *5 (W.D. Tenn. Apr. 15, 2019) (quoting *Jacobs v. Strickland*, No. 2:08-cv-680, 2009 WL 2476896, at *3 (S.D. Ohio Aug. 11, 2009) ("The Magistrate Judge . . . correctly concluded that [plaintiff] could not assert the claims of other Sunni Muslims who were allegedly deprived of their rights under RLUIPA and the United States Constitution.")). Thus, although Plaintiff alleges in his complaint that inmate Wilkins was similarly affected by Defendants' actions, Plaintiff lacks standing to bring claims on Wilkins's behalf in this action. The claims addressed herein by the Court are those raised by Plaintiff seeking to vindicate deprivations of Plaintiff's own constitutional rights.

Next, although the complaint names Officer Warren as a Defendant to this action, Plaintiff does not make any factual allegations regarding Warren. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v.*

4

*Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Thus, where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff's allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), any claims against Defendant Warren in his individual or official capacity must be dismissed.

Third, after filing his complaint, Plaintiff submitted a letter to the Court in which he expresses concern that a certain jail official has opened Plaintiff's legal mail outside of Plaintiff's presence. (Doc. No. 8). Plaintiff may wish to seek permission to amend his complaint to allege a federal claim based on this incident. The Court expresses no opinion as to the timeliness and/or viability of such claim.

2. <u>First Amendment free exercise claims</u>

The complaint alleges that Defendants Sunder and Bragg violated Plaintiff's First Amendment right to free exercise of religion. "The Free Exercise Clause of the First Amendment,

5

applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Penn.*, __ U.S. __, 141 S. Ct. 1868, 1876 (2021). It is settled that prisoners have a First Amendment right to practice their religious beliefs, *Hudson v. Palmer*, 468 U.S. 517, 523 (1984), and prisoners must be provided "reasonable opportunities" to practice their religion. *Id*.

"Under [Section] 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). "Only after a prison inmate shows a sincere belief that his religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Id*. (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (explaining that the first requirement in a section 1983 First Amendment free-exercise claim is for the plaintiff to show that the prison's action "substantially burdened his sincerely-held religious beliefs"); *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir.2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.")).

Here, although the complaint does not explicitly state, the Court will assume for purposes of the required PLRA screening that Plaintiff's religious beliefs are sincere.

The complaint alleges that, on one occasion, Officer Sunder prohibited Plaintiff from praying in the jail's library where religious services are held. However, the complaint does not allege that Officer Sunder denied Plaintiff the ability to attend a religious service that was underway in the jail's library on that day or any other day. Nor does the complaint allege that Officer Sunder denied Plaintiff the ability to exercise his Muslim religion by praying on that day

6

or any other day in his cell or in another location within the jail. Because the complaint fails to allege that Officer Sunder burdened or restricted Plaintiff's practice of his religion in any way, the Court finds that the complaint fails to state a First Amendment free exercise claim under Section 1983 against Officer Sunder in his individual capacity upon which relief can be granted. *See Davis v. Hamilton County Jail*, No. 1:16-CV-00486, 2017 WL 6566208, at *2 (E.D. Tenn. Dec. 22, 2017) (finding that "nothing in the complaint allows the Court to plausibly infer that any Defendant restricted Plaintiff's ability to practice his religion. While Defendant Byrd's statements may have made Plaintiff uncomfortable, nothing in the complaint suggests that these statements burdened or restricted Plaintiff's practice of his religion in any way.").

The complaint alleges that Defendant Bragg placed Plaintiff in solitary confinement because Plaintiff identified himself as Muslim and requested to exercise a tenet of his Muslim faith, prayer. These allegations could could be reasonably construed as "substantially burden[ing] [Plaintiff's] sincerely-held religious beliefs." *Barhite*, 377 F. App'x 508, 510 (citing *Boles,* 486 F.3d 1177, 1182 and *Salahuddin*, 467 F.3d 263, 274-75). Thus, the Court finds that the complaint states a colorable First Amendment free exercise claim under Section 1983 against Defendant Bragg in his individual capacity.

The complaint also names Sunder and Bragg as Defendants in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the complaint alleges that Sunder and Bragg are employees of Hickman County, Tennessee. (Doc. No. 1 at 2). Thus, a claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Hickman County or its agent. *Monell Dep't of*

7

*Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Hickman County to be liable Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Hickman County under Section 1983. The complaint does not identify or describe any of the county's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put the county on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp.2d 747, 751 (M.D. Tenn. 2010); *Johnson v. Metro. Gov't of Nashville*, No. 3:10-cv-0589, 2010 WL 3619790, at *2-3 (M.D. Tenn. Sept. 13, 2010). Consequently, the Court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability against the Hickman County. Plaintiff's Section 1983 claims

against Defendant Sunder and Bragg in their official capacities (which are actually claims against Hickman County, Tennessee) therefore must be dismissed.

3. First Amendment retaliation claims

The complaint alleges that Jail Administrator Braggs placed Plaintiff in solitary confinement because Plaintiff requested to pray in the jail's library and identified his religion as Muslim. A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Although the complaint does not explicitly set forth a retaliation claim, the Court finds that it is appropriate under the record presented to consider a retaliation claim against Defendant Braggs. In *Hill*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se prison litigants." *Hill*, 630 F.3d at 471 (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals indicated that, where the facts alleged in a prisoner's complaint are sufficient to support these elements, the claim should go forward even if the inmate "fails to explicitly state" that he is making a First Amendment retaliation claim or does not "make an effective argument for that

9

claim in his . . . complaint." *Id*. (citing *Pasley*, 345 F. App'x at 986). Thus, the Court considers whether the pro se complaint alleges a non-frivolous retaliation claim under Section 1983 against Defendant Braggs.

Here, Plaintiff's efforts to exercise his Muslim faith "are activities protected by the Constitution." *Lumbard v. Lillywhite*, 815 F. App'x 826, 834 (6th Cir. 2020) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)).

Second, placement in solitary confinement "would likely have a strong deterrent effect" on a prisoner's protected activity. *Id*. at 835 (finding that prisoner-plaintiff's allegation that he was placed in the "drunk tank," a "filthy, chaotic, and overcrowded" space as a result of engaging in protected activities, plaintiff's allegation rose above a de minimis deprivation" and met the third element of a retaliation claim under Section 1983); *see also Thaddeus-X*, 175 F.3d at 398-99 (holding that when prison officials placed an inmate in "the area of the prison used to house mentally disturbed inmates" it "would likely have a strong deterrent effect" on the inmate's protected activities").

Finally, the complaint specifically alleges that Defendant Bragg placed Plaintiff in solitary confinement directly after asking Plaintiff which religion he practiced and that Defendant Bragg stated that he placed Plaintiff in solitary confinement "because of [his] religion, so [he] could pray." (Doc. No. 1 at 5). *See Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action") (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26, (6th Cir. 2010)). In addition, although he was not required to do so at this state of the proceedings, Plaintiff attached to his complaint a witness statement in which inmate Joseph S. Gibbs states, under penalty of perjury, that he

overheard Defendant Bragg "laughing about an incident that had just taken place" and stating "I'm going to take Howes and Wilkins and put them in the hole so they can practice whatever fucking religion they want." (Doc. No. 1 at 14). The Court finds that Plaintiff has sufficiently alleged that the punitive actions taken by Bragg were motivated by Plaintiff's stated desire to engage in Muslim prayer. *Compare Lumbard,* 815 F. App'x at 835 (finding that prisoner-plaintiff had sufficiently alleged that prison officials' adverse action was caused by plaintiff's protected activities when plaintiff alleged that an officer told him plaintiff was being moved to a holding cell because of his mother's calls and, in a conversation with plaintiff's counsel, the officer insinuated that she was going to move plaintiff out of the holding cell but threatened to reconsider after receiving a complaint from plaintiff's counsel) *to Oliver v. Gray*, No. 2:19-cv-619, 2020 WL 5972920, at *4 (S.D. Ohio Sept. 29, 2020) (finding that defendant was entitled to summary judgment where plaintiff alleged that defendant placed plaintiff in segregation "for trying to protect his interest to exercise his Islamic faith" but plaintiff's statement contained no details about the alleged protected First Amendment activity he was engaged in or any allegations about causation that would explain how or why defendant's conduct was motivated by plaintiff's practice of his faith). The Court therefore finds that the complaint states a non-frivolous First Amendment retaliation claim against Bragg in his individual capacity under Section 1983. This claim will proceed.

For the same reasons that Plaintiff's First Amendment free exercise official capacity claims against Defendants Sunder and Bragg fail, Plaintiff's First Amendment retaliation official capacity claim against Bragg fails. That claim will be dismissed.

4. <u>Eighth Amendment claims</u>

Next, the complaint alleges that Defendant Bragg violated Plaintiff's right to be free from cruel and unusual punishment when Bragg placed Plaintiff in solitary confinement for "a few hours" for stating that he is a Muslim and asking to pray in the jail library.

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cty. Sheriff Dep't*, No. 1:10CV672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). And the Eighth Amendment protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, which includes "extreme deprivations" that deny "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "But the Eighth Amendment does not apply to pretrial detainees like [plaintiff]." *Greene v. Crawford Cty., Mich.*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004)). State pretrial detainees are instead protected by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1; *Greene*, 22 F.4th at 605; *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 n.9 (2007).

The Due Process Clause "provides similar if not greater protections than the Cruel and Unusual Punishments Clause" of the Eighth Amendment. *Spencer*, 449 F.3d at 727 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) and *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). To state a claim under either Fourteenth Amendment in this context, a plaintiff must allege (among other things) that an objectively "sufficiently serious" deprivation has occurred, "resulting in a

denial of the 'minimal civilized measure of life's necessities.'" *Francis v. Altiere*, 491 F. App'x 539, 541 (6th Cir. 2012) (quoting *Farmer*, 511 U.S. at 834); *Spencer*, 449 F.3d at 728.

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 Fed. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Conditions of confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Further, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9 (emphasis added). "Allegations about temporary inconveniences, *e.g.,* being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Pena v. Brown*, No. 2:20-cv-250, 2021 WL 4350124, at *5 (W.D. Mich. Sept. 23, 2021) (collecting cases).

With regard to the nature of Plaintiff's stay in solitary confinement, there are no allegations in the complaint concerning the conditions Plaintiff faced. Plaintiff does not claim that he was denied adequate food, clothing, shelter, recreation, or medical care while in solitary confinement. Neither has he alleged any injury or harm as a result of the alleged conditions of his solitary confinement. With regard to the duration of Plaintiff's confinement in solitary confinement, the complaint alleges that Plaintiff was there for "a few hours." (Doc .No. 1 at 13).

Although the Court does not condone Defendant Bragg's alleged action, the Court finds that Plaintiff's described stay in solitary confinement for a few hours, without more, did not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see Williams v. Wilkinson*, 51 Fed. App'x 553, 557 (6th Cir. 2002) (where, as punishment for the drug test that prison authorities allege plaintiff failed, plaintiff received a suspended fifteen-day sentence in disciplinary segregation, he lost a promised reduction in his security classification, was denied a furlough, and had to participate in a substance abuse program that interfered with his ability to earn money at his prison employment, court held that none of these punitive measures qualifies as a "significant and atypical hardship."); *Brunello v. Limbalm*, No. 3:19-cv-P571-DJH, 2019 WL 4060869, at *2 (W.D. Ky. Aug. 28, 2019) (finding that plaintiff, a pretrial detainee, who was placed in solitary confinement, then in "super max," and then on lockdown, and denied certain privileges for approximately 32 days even though he did not commit a disciplinary infraction did not state a due process claim for the loss of privileges and confinement to segregation). There, Plaintiff's Eighth Amendment cruel and unusual punishment claim against Bragg in his individual capacity fails to state a Section 1983 claim upon which relief can be granted, and the claim will be dismissed.

There are no allegations in the complaint supporting an official capacity claim against Bragg under the Eighth Amendment. Any such claim will be dismissed.

5. <u>RLUIPA claims</u>

The complaint also alleges claims under RLUIPA against Defendants Bragg and Sunder. RLUIPA "provide[s] very broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015). RLUIPA "prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling

14

governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). RLUIPA defines " 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt*, 574 U.S. at 358 (quoting § 2000cc-5(7)(A)). Congress specified that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). Courts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006)).

Analysis under RLUIPA is a "three-act play." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). First, "the inmate must demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief.'" *Id.* (quoting *Holt*, 574 U.S. at 361). So long as the practice is traceable to a sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), it does not matter whether the inmates' preferred exercise is "central" to his faith, 42 U.S.C. § 2000cc-5(7)(A). Second, the inmate "must show that the government substantially burdened that religious exercise." *Cavin,* 927 F.3d at 458. While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. Dec. 10, 2007) (citations omitted); *see also Marshall v. Frank*, No. x, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d

15

1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 F. App'x at 734. Upon satisfaction of these two steps, the burden then shifts to the government for the third act: it "must meet the daunting compelling-interest and least-restrictive-means test." *Id*.

Here, even if for purposes of the required PLRA screening the Court assumes that Plaintiff seeks to pray out of a "sincerely held religious belief," the complaint fails to allege that Officer Sunder "substantially burdened" Plaintiff's religious exercise. While the complaint alleges that Officer Sunder denied Plaintiff's request to pray in the jail library, the complaint does not allege that Officer Sunder actually impeded Plaintiff's ability to exercise his Muslim religion. And importantly, the complaint does not allege that communal worship (such as that which Plaintiff may have been seeking if, in fact, communal worship was occurring in the jail library at the time Plaintiff requested access) is an important tenet of Plaintiff's religion.[1] *See, e.g., Fox v. Washington*, 949 F.3d 270, 279-80 (6th Cir. 2020) (finding that prisoner-plaintiffs met their burden under step two of RLUIPA by alleging that lack of communal worship creates substantial pressure to violate plaintiffs' religious beliefs) (citing *Cavin*, 927 F.3d 455, where prison officials prevented Wiccan inmate from observing holiday called Esbats with other Wiccan inmates which caused plaintiff hardship, as he believed that "Esbat services have 'more energy' 'when you have a collective of Wiccans together.'"); *see also Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) ("Denying a Muslim inmate the opportunity to partake in Eid would substantially burden his free exercise rights, so Maye has alleged a deprivation of his rights under the Free Exercise Clause."); *Whitney v. Brown*, 882 F.2d 1068, 1073 (6th Cir. 1989) (similarly finding a substantial burden for denying Jewish prisoners' participation in Passover Seder). As such, the Court does not reach the

---

[1] Further, the complaint does not allege that communal worship of any kind was occurring in the jail library on the date Plaintiff requested to pray in the library.

16

Case 1:23-cv-00023   Document 9   Filed 05/02/23   Page 16 of 19 PageID #: 54

third step of the RLUIPA analysis with respect to Defendant Sunder. Thus, Plaintiff's individual-capacity claim RLUIPA claim against Defendant Sunder fails to state a claim upon which relief can be granted, and the claim will be dismissed.

With respect to Defendant Bragg, the complaint alleges that he placed Plaintiff in solitary confinement because of Plaintiff's statement of Muslim faith and request to exercise his religion. For purposes of the required PLRA screening, the Court finds that the alleged burden placed on Plaintiff—knowing that Bragg has punished Plaintiff once already and exhibited a hostility toward Plaintiff's religion—could be viewed as "substantial" in that it places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God*, 258 F. App'x 729, 733-34. Further, the complaint may be reasonably construed to imply that Bragg's actions are not the least restrictive means of furthering a compelling government interest. The Court therefore finds that Plaintiff states a colorable claim for violation of RLUIPA against Bragg in his individual capacity.

The Court notes, however, that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities. *Haight v. Thompson*, 763 F.3d 554, 569 (6th Cir. 2014). As a result, Plaintiff may not recover damages under RLUIPA from Defendant Bragg in his individual capacity.

With respect to Plaintiff's official capacity claims under RLUIPA against Defendants Sunder and Bragg, there are no allegations in the complaint supporting such claims. Those claims will be dismissed. In any event, RLUIPA does not permit damages claim against prison officials in their official capacities either. *Resch v. Rink*, No. 2:21-cv-227, 2022 WL 794849, at *8 (W.D. Mich. Mar. 16, 2022).

## II. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 7). As grounds for his motion, Plaintiff states that he is indigent and therefore unable to retain a private attorney; his imprisonment will limit his ability to litigate; and counsel would better enable Plaintiff to present evidence and cross examine witnesses at trial. (*Id*. at 1). However, an indigent plaintiff in a civil action, unlike a defendant in a criminal action, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 606-07 (6th Cir. 1993)). Plaintiff's indigence alone, therefore, is not an exceptional circumstance. Nor, at this time, do the circumstances presented necessitate appointment of counsel; Plaintiff has filed an organized, fourteen-page complaint in which he sets forth the issues in this case in an understandable manner. Thus, the appointment of counsel is not warranted at this time. *See Miles*, 2020 WL 6121438, at *4. Accordingly, the Motion to Appoint Counsel (Doc. No. 7) will denied, but without prejudice to renewal by Plaintiff in the future if he can better explain why exceptional circumstances justify the appointment of counsel.

## III. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that any claims against Defendant Warren in his individual or official capacity must be dismissed.

The complaint fails to state a First Amendment free exercise claim upon which relief can be granted under Section 1983 against Officer Sunder in his individual capacity. Likewise, Plaintiff's First Amendment free exercise claims under Section 1983 claims against Defendant Sunder and Bragg in their official capacities (which are actually claims against Hickman County,

Tennessee) must be dismissed. However, the complaint states a colorable First Amendment free exercise claim under Section 1983 against Defendant Bragg in his individual capacity. That claim will proceed.

Next, the complaint states a colorable First Amendment retaliation claim under Section 1983 against Bragg in his individual capacity. That claim will proceed. Plaintiff's First Amendment retaliation claim against Bragg in his official capacity, however, fails, and that claim will be dismissed.

Further, Plaintiff's Eighth Amendment cruel and unusual punishment claim against Bragg in his individual capacity fails to state a Section 1983 claim upon which relief can be granted, and that claim will be dismissed. There are no allegations in the complaint supporting an official capacity claim against Bragg under the Eighth Amendment. Any such claim will be dismissed.

Finally, Plaintiff's individual-capacity RLUIPA claim against Defendant Sunder fails to state a claim upon which relief can be granted, and the claim will be dismissed. However, Plaintiff states a colorable claim for violation of RLUIPA against Bragg in his individual capacity. Nonetheless, Plaintiff may not recover damages under RLUIPA from Defendant Bragg in his individual capacity. With respect to Plaintiff's official capacity claims under RLUIPA against Defendants Sunder and Bragg, there are no allegations in the complaint supporting such claims. Those claims will be dismissed.

Plaintiff's Motion for Appointment of Counsel (Doc. No. 7) will be denied without prejudice.

An appropriate Order will be entered.

                                                      _____
                                                      WILLIAM L. CAMPBELL, JR.
                                                      UNITED STATES DISTRICT JUDGE