IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | |
|---|---|
| AARON JAMES HOWES ) | |
| ) | |
| v. ) | Case No. 1:23-cv-00023 |
| ) | |
| JAMIE BRAGG ) | |

**TO:** Honorable William L. Campbell, Jr., Chief District Judge

### R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered May 2, 2023 (Docket Entry No. 10), this *pro se* and *in forma pauperis* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment filed by Defendant Jamie Bragg (Docket Entry No. 38). Plaintiff has not responded to the motion. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED** and this case be **DISMISSED**.

### I. BACKGROUND AND COMPLAINT

Aaron James Howes ("Plaintiff") is currently an inmate in the Dickson County Jail in Charlotte, Tennessee. He was previously confined as a pre-trial detainee in the Hickman County, Jail (the "jail") in Centerville, Tennessee. On April 10, 2023, he filed this *pro se* and *in forma pauperis* lawsuit based on events that occurred at the Jail in March 2023. *See* Complaint (Docket Entry No. 1). Seeking compensatory damages, punitive damages, and injunctive relief, Plaintiff

brings claims under 42 U.S.C. § 1983 and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

Plaintiff alleges that he is an adherent of the Muslim faith, and that, at 10:00 p.m. on the evening of March 14, 2023, he and another inmate requested permission to go to the jail library to pray "because that's where the jail conducts church." *See* Complaint at 5. Sergeant Sunder, who was the jail tower officer at the time, denied their request. Plaintiff then filed a grievance that night regarding Sgt. Sunder's refusal to permit him to go to the jail library. The next morning, jail Lieutenant Jamie Bragg ("Bragg") brought Plaintiff and the other inmate into the hallway and questioned them. Bragg then placed Plaintiff and the other inmate in solitary confinement. Plaintiff alleges that Bragg stated that "it was because of [their] religion, so [they] could pray." Plaintiff and the other inmate remained in solitary confinement for a few hours before being released back into the general housing unit.

Upon initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff raised three arguable claims against Defendant Bragg in his individual capacity: (1) a claim that Bragg violated Plaintiff's First Amendment free exercise of religion rights by placing him in solitary confinement because of his religious beliefs; (2) a claim that Bragg retaliated against Plaintiff because of his attempt to exercise protected First Amendment religious rights; and, (3) a claim against Bragg under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 for infringing upon Plaintiff's exercise of his religious beliefs. *See* Memorandum Opinion (Docket Entry No. 9). All other claims raised by Plaintiff were dismissed. *Id*.

After Defendant filed an answer, a scheduling order was entered that provided for a period of pretrial activity in the case, including a period for discovery. *See* Docket Entry Nos. 25. A jury trial is demanded, but a trial has not been scheduled pending resolution of the motion for summary judgment. There are no motions pending in the case other than Defendant's motion for summary judgment.

## II. MOTION FOR SUMMARY JUDGMENT

Defendant seeks summary judgment in his favor under Rule 56 of the Federal Rules of Civil Procedure. His motion is supported by a memorandum of law (Docket Entry No. 39), a statement of undisputed material facts (Docket Entry No. 40), and Defendant's own declaration (Docket Entry No. 41) and five exhibits attached thereto.

Defendant asserts that, as the jail Lieutenant at the time of the events at issue, he was responsible for investigating complaints related to jail activities and for reviewing and responding to inmate grievances that were submitted via the jail's kiosk system. Defendant does not dispute Plaintiff's allegation that Sgt. Sunder denied the inmates' request to leave the housing pod on the evening of March 14, 2023, and go to the jail library to pray. Defendant further admits that he had a conversation with the two inmates the next morning, during which he removed them from the housing pod and questioned them about the incident from the prior evening and about their Muslim religious beliefs. Defendant admits that he was skeptical of the inmates and that he placed both inmates in isolation cells for a few hours after his meeting with them. He contends that both inmates were confrontational, argumentative, and disrespectful during the questioning, which occurred in front of other inmates, and that he placed them in an isolation cell to give them time to "cool off" for a few hours before they were placed back in the housing pod. Defendant denies

3

any animus against the inmates because of their religious beliefs and contends that, although he became angry with the inmates and was skeptical of their actions, this was due to both their argumentative behavior and his belief that the inmates were attempting to manipulate Sgt. Sunder into permitting them to leave the housing pod in the late evening at a time that the jail library was closed. Finally, Defendant acknowledges that, after Plaintiff filed a jail grievance about the matter, he was administratively disciplined for failing to properly investigate the original incident with Sgt. Sunder, for failing to have timely responded to a prior grievance filed by Plaintiff about converting to practicing Islam, and for a "body cam" violation.

Defendant argues that these events do not support a constitutional claim because they evidence nothing more than an isolated incident that was immediately corrected and that does not rise to the level of a violation of Plaintiff's First Amendment Free Exercise rights or of his right to not suffer retaliation because of his religious beliefs. Defendant further asserts that he is entitled to qualified immunity from any monetary liability for his actions. Finally, Defendant asserts that RLUIPA provides only for the remedy of injunctive relief but that the RLUIPA claim has become moot because is undisputed that Plaintiff has been transferred from the jail.

By Order entered February 26, 2024 (Docket Entry No. 42), Plaintiff was notified of the need to respond to the motion and given a deadline of April 26, 2024, to file a response. Despite being given more time to respond than the 21-day response period provided for by Local Rule 56.01(a), Plaintiff has not filed a response of any kind to the motion. Nor has Plaintiff taken any other action in the case since the motion for summary judgment was filed.

# III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his position. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). As the Sixth Circuit has noted, when a defendant files a motion for summary judgment, the plaintiff is challenged to "put up or shut up" on critical issues. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

Plaintiff's *pro se* status does not relieve him of this obligation. *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## IV. ANALYSIS

### A. Constitutional Standards and RLUIPA

A prison inmate retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Procunier v. Pell*, 417 U.S. 817, 822 (1974). Among these rights is the right afforded by the First Amendment to practice religious beliefs. *See O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Nevertheless, a violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion, *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *Bennett v. Burt*, 2016 WL 7034240, at *3 (W.D. Mich. Dec. 2, 2016), and the practical reality of the prison setting means that a prison inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations that are necessary and attendant to the prison setting. *See Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979) (holding that limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate First Amendment rights of inmates); *Pollock v. Marshall*, 845 F.2d 656, 658–60 (6th Cir. 1988) (holding that plaintiff who challenged regulation limiting the length of prisoners' hair failed to establish a constitutional violation, as he did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with safety- and security-based hair length regulation).

The First Amendment also protects prison inmates from being retaliated against for exercising First Amendment rights. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005);

6

*Smith v. Campbell*, 250 F.3d 1032, 1036-37 (6th Cir. 2001); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To prove a First Amendment retaliation claim, a plaintiff must establish that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, *supra*. Once a plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind the alleged adverse action, the burden of production shifts to the defendant to show that the same action would have been in the absence of the protected activity. *Id*.

RLUIPA "prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). *See also Cavin v. Michigan Department of Corrections*, 927 F.3d 455, 458 (6th Cir. 2019).

### B. Qualified Immunity

Qualified immunity protects government officials from civil damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 977 (6th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). The doctrine of qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. at 978 (internal quotations omitted) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Once raised by the defendant, the plaintiff bears the burden to show qualified immunity does not apply. *Id*.; *See also*

7

*Gambrel v. Knox Cty, Kentucky*, 25 F.4th 391, 399 (6th Cir. 2022). The Court may address the prongs of the qualified immunity analysis in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**C. Plaintiff's Claims and Summary Judgment**

Although Plaintiff's allegations were sufficient to permit his claims against Defendant to survive initial review, he has not responded to Defendant's motion for summary judgment and has taken steps to rebut the motion with argument or evidence. After review of the record that is before the Court, the Court finds that no genuine issues of material fact exist that require resolution of Plaintiff's claims at trial and that summary judgment should be granted to Defendant on Plaintiff's claims.

When a motion for summary judgment is properly supported under Rule 56, such as Defendant's motion, the non-moving party may not merely rest on the allegations contained in the complaint but must respond with affirmative evidence that supports his claims and that establishes the existence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323-24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002); *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). The Court cannot supply or assume facts supporting Plaintiff's case and is not required to make legal arguments on his behalf. *See Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215, 2000 WL 302998 (6th Cir. 2000); *Bell v. Tennessee*, 2012 WL 996560, *9 (E.D. Tenn. March 22, 2012). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) ('it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of

a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.").

Plaintiff has not satisfied this threshold obligation. He has not responded to the motion for summary judgment, has not rebutted Defendant's evidence or arguments, and has not supported his claim with any affirmative evidence. This is so even though the Court specifically advised Plaintiff of the need to respond to the motion when it set a deadline for his response. Additionally, Plaintiff has not responded to Defendant's Statement of Undisputed Facts, as required by Rule 56.01(c) of the Local Rules of Court. This failure to respond indicates "that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Accordingly, the Court is permitted to rely upon the facts set forth by Defendant in his statement of undisputed material facts as the undisputed facts.

Initially, the Court notes that Plaintiff has not addressed the defense of qualified immunity that is raised by Defendant. Because the burden of demonstrating that Defendant is not entitled to qualified immunity lies with Plaintiff once the defense is raised, this failure alone is sufficient to warrant granting Defendant's motion. *See Winter v. City of Westlake, Ohio*, 2018 WL 838283, at *9 (N.D. Ohio Feb. 13, 2018) ("Having moved for qualified immunity, Defendants have raised the defense and Plaintiffs' failure to respond militates in favor of judgment for Defendants since Plaintiffs have not met their burden.").

Furthermore, based upon the undisputed facts that are before the Court, no reasonable jury could find in favor of Plaintiff on his claims. Plaintiff's request to leave the housing pod with another inmate during the evening hours when the jail library was closed was properly denied by the officer on duty at the time, causing Plaintiff to accuse the officer of violating Plaintiff's

constitutional rights and to threaten her with a grievance. Upon being questioned by Defendant the next morning, Plaintiff was upset and became argumentative and disrespectful, and Defendant placed Plaintiff in an isolation cell for two hours to calm down before he was released back to his housing pod. Plaintiff experienced no other adverse action and suffered no lasting consequences from this interaction with Defendant. Further, there is no evidence that Plaintiff experienced any actual infringement or hinderance upon his ability to worship according to his faith.

At best, Plaintiff's interaction with Defendant was an isolated, brief, and *de minimis* event that fails to rise to the level of a constitutional violation. Generally, "*de minimis* level[s] of imposition" do not implicate constitutional protections. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Further, isolated and *de minimis* incidents that impact a prisoner's ability to exercise his religious beliefs do not violate the First Amendment. *See Lopiccolo v. Michigan Dep't of Corr.*, 2020 WL 5291961, at *2 (E.D. Mich. Sept. 4, 2020) (citing *Colvin v. Caruso*, 605 F.3d 282, 290, 293-94 (6th Cir. 2010) (holding that isolated incidents of prison officials providing non-kosher food to a Jewish prisoner did not violate the First Amendment)); *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) ("*De minimis* burdens on the free exercise of religion are not of constitutional dimension."); *Pitre v. Ledet*, 2021 WL 1784648, at *5 (E.D. La. May 5, 2021) (finding that "a one-day deprivation of a religious text simply does not rise to the level of a constitutional violation"). Similarly, a "mere inconvenience" on an inmate's ability to practice his religious beliefs does not equate to a substantial burden. *See Living Water Church of God v. Charter Twp. of Meridian*, 258 Fed.App'x 729, 739 (6th Cir. 2007) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). *See Johnson v. Baker*, 1995 WL 570913 (6th Cir. Sept. 27, 1995); *Cayce v. George*, 2011 WL 6754067 (M.D. Tenn. Dec. 23, 2011)

(Sharp, J.). Finally, a brief stay in an isolation cell that is not accompanied by other consequences does not amount to the type of adverse action necessary to implicit constitutional protections. *See Baze v. Huddleston*, 2012 WL 2862612, at *3 (W.D. Ky. July 11, 2012) ("Courts have repeatedly held that the Constitution's protections are not frustrated by temporary reassignments in prison."). Even when viewed in the light most favorable to Plaintiff, there is simply no evidence from which a reasonable jury could conclude that Defendants took any actions that created a substantial burden on Plaintiff's ability to exercise his religious beliefs or that rose to the level of unconstitutional retaliation against Plaintiff.

With respect to Plaintiff's RLUIPA claim, RLUIPA does not provide for the assessment of monetary damages against prison officials. *Haight v. Thompson*, 763 F.3d 554, 569 (6th Cir. 2014). Although RLUIPA does provide for a remedy of injunctive relief, Plaintiff's RLUIPA claim has become moot because of his transfer to another facility. *See Heyward v. Cooper*, 88 F.4th 648, 656 (6th Cir. 2023) (prison inmate's RLUIPA claim was moot because he had been transferred to another facility).

## RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that the motion for summary judgment filed by Defendant Jamie Bragg (Docket Entry No. 38) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(b)(1). A failure

to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any other party wishing to respond to the objections shall file a response within fourteen (14) days after being served with a copy of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge